UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

APRIL L. ELOKOBI,

    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 3:15-cv-77

District Judge Thomas M. Rose
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

---

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").[2] This case is before the Court upon Plaintiff's Statement of Errors (doc. 9), the Commissioner's memorandum in opposition (doc. 10), Plaintiff's reply (doc. 12), the administrative record (doc. 6),[3] and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920[,] respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Citations in this Report and Recommendation to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

[3] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

# I.

### A. Procedural History

Plaintiff filed for DIB and SSI alleging a disability onset date of June 19, 2011.  PageID 310-19.  Plaintiff claims disability as a result of a number of alleged impairments including, *inter alia*, low back and cervical disorders, a heart disorder, a respiratory disorder, obesity, hypertension, an affective disorder, and an anxiety disorder.  PageID 109.

After initial denials of her applications, Plaintiff received a hearing before ALJ Christopher L. Dillon.  PageID 130-53.  The ALJ issued a written decision on August 29, 2013 finding Plaintiff not disabled.  PageID 107-20.  Specifically, the ALJ's findings were as follows:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2.  The claimant has not engaged in substantial gainful activity since June 19, 2011, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).

3.  The claimant has the following severe impairments: low back and cervical disorder, heart disorder, respiratory disorder, obesity, hypertension, affective disorder and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  The claimant retains the [residual] functional capacity ["RFC"] for work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; pushing or pulling similar amounts; standing, walking, and sitting for 6 hours each; the option to use an assistive device, such as a cane, for all walking; no climbing of any kind; no more than occasional ability to perform all other postural activity; no more than frequent reaching but no reaching above shoulder level; no more than occasional exposure to environmental extremes, such as dust, gas, fumes, heat, cold, humidity; no more than occasional interaction with supervisors,

      coworkers, and the public; no more than simple, routine, repetitive tasks performed with adequate persistence that only requires regularly scheduled breaks with a pace and stress tolerance that allows for no production quotas.

6. The claimant is unable to perform any past work (20 CFR 404.1565 and 416.965).

7. The claimant was born [in] 1965 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 19, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

PageID 109-19.

      Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 27-30. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

### B. Evidence of Record

The ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 109-18. Plaintiff, in her Statement of Errors, summarizes her testimony at the administrative hearing. Doc. 9 at PageID 1130-33. The Commissioner's memorandum in opposition summarizes the relevant medical evidence. Doc. 10 at PageID 1147-51. Except as otherwise stated in this Report and Recommendation, the undersigned incorporates the recitation of evidence put forth by both parties and the ALJ. Where applicable, the Court will identify the medical evidence relevant to this decision.

### II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id*. at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the

record.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).  "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Bowen*, 478 F.3d at 746.

    **B.**    **"Disability" Defined**

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act.  42 U.S.C. § 423(d)(1)(A).  Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *Id*.

Administrative regulations require a five-step sequential evaluation for disability determinations.  20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step ends the ALJ's review, *see Colvin*, 475 F.3d at 730, the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 818 (S.D. Ohio 2001).  A claimant bears the ultimate burden of establishing that he or she is disabled

under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

In her Statement of Errors, Plaintiff argues that the ALJ erred in: (1) determining her RFC; (2) evaluating the medical source opinion evidence, including opinions from her treating physician K.B. Reddy, M.D., and treating psychiatrist Sri Alwis, M.D.; and (3) assessing her credibility. Doc. 9 at PageID 1135-43. Finding remand warranted based upon the ALJ's assessment of the treaters' opinions, the undersigned makes no finding with regard to Plaintiff's remaining assignments of error. Instead, the undersigned recommends that the ALJ determine Plaintiff's RFC and assess Plaintiff's credibility -- along with all medical source opinions of record -- anew on remand.

"[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). Treating physicians and psychologists top the hierarchy. *Id*. "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Id*. "[N]on-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id*. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

"An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *LaRiccia v. Comm'r of*

*Soc. Sec.*, 549 F. App'x 377, 385 (6th Cir. 2013) (citation omitted) (alterations in original). This requirement is known as the "treating physician" rule. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citations omitted). Greater deference is given to treating source opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2); *see also Blakley*, 581 F.3d at 406. Thus, an ALJ must give controlling weight to a treating source if the ALJ finds that opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakley*, 581 F.3d at 406-07. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id*. Thus, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id*. at 406; *see also* 20 C.F.R.

7

§ 404.1527(c).[4]  In addition, unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions according to [these] factors, regardless of their source[.]" *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

An ALJ is not required to accept a treating physician's conclusion that his or her patient is "unemployable." Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a treating physician's opinion -- that his or her patient is disabled -- is not "give[n] any special significance." 20 C.F.R. § 404.1527; *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (stating that "[t]he determination of disability is ultimately the prerogative of the Commissioner, not the treating physician"). However, "[t]here remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

A.     **Dr. Reddy**

On April 18, 2012, Dr. Reddy diagnosed Plaintiff with conditions including lumbar radiculopathy, cervical radiculopathy, and lumbar stenosis and opined, *inter alia*, that she can stand up to 30 minutes at a time for a total of 4 hours in an 8-hour day; sit up to 1 hour at a time for a total of 4 hours in an 8-hour day; and lift/carry less than 5 pounds. PageID 698-99. A year later, on June 3, 2013, Dr. Reddy opined that Plaintiff can sit for 4 hours; stand or walk for 2 hours, although "not continuous[ly]" because she "is a fall risk and must use her cane when ambulating"; lift/carry 10 pounds; occasionally bend and climb stairs with a railing; and must

---

[4] In essence, "opinions of a treating source . . . must be analyzed under a two-step process, with care being taken not to conflate the steps." *Cadle v. Comm'r of Soc. Sec.*, No. 5:12 CV 3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if . . . the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 404.1527. *Id.*

elevate her legs several times a day and avoid hazards. PageID 1050-52. Dr. Reddy further opined that Plaintiff would be off task 20-30% of every hour due to pain and/or fatigue, and that she "is unable to work in a regularly scheduled, competitive environment [because] she is a fall risk[,] fatigues easily[,] and must be able to rest . . . at will." PageID 1053.

In weighing Dr. Reddy's opinions, the ALJ concluded that:

> Dr. Reddy's treatment notes, especially the most recent, do not support these limitations. Dr. Reddy's most recently notes an inability to heel/toe walk, antalgic gate and [Plaintiff's] use of a cane. Prior treatment notes reflect less than consistent clinical findings. For example, [Plaintiff] has only an occasional positive straight leg raise or restricted motion. More importantly, Dr. Reddy, a pain management physician, was not prescribing the claimant pain medication. I give little weight to the opinion of Dr. Reddy, with regard to claimant's limitations, because his treatment records and clinical finding[s] do not support his opinion.

PageID 114-15 (internal citations omitted). The undersigned agrees with Plaintiff that the ALJ erred in assessing, and ultimately discounting, Dr. Reddy's opinions.

Initially, the Court notes that, in weighing these opinions, the ALJ failed to mention the concept of controlling weight or set forth the required analysis. *See Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(c)(2). Because of the ALJ's failure in this regard, the Court cannot determine whether he undertook the "two-step inquiry" required when analyzing treating source opinions. *See* note 5 *supra*; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376-78 (6th Cir. 2013). The lack of explanation regarding the "controlling weight [analysis] hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." *Gayheart*, 710 F.3d at 377 (citations omitted). Such failure amounts to reversible error. *See Aytch v. Comm'r of Soc. Sec.*, No. 3:13-cv-135, 2014 WL 4080075, at *5 (S.D. Ohio Aug. 19, 2014) (citation omitted).

Even assuming, *arguendo*, that the ALJ adequately conducted the controlling weight test -- which the undersigned concludes he did not -- the ALJ nevertheless failed to provide good reasons for discounting the weight accorded to Dr. Reddy's opinions. Without further explanation by the ALJ, it is unclear to the undersigned how recent treatment notes reflecting "an inability to heel/toe walk, antalgic gait[5] and . . . use of a cane" fail to support Dr. Reddy's limitations; in fact, such findings appear to support his opinions which, *inter alia*, describe Plaintiff as a "fall risk" with significant standing and walking limitations. *See* PageID 698-99, 1050-52.

Further, in discounting his opinions, insofar as the ALJ relies on Dr. Reddy's purported failure to prescribe Plaintiff pain medication, such reliance is flawed. The Court's review of the record reveals that Dr. Reddy prescribes, or has prescribed, medication to Plaintiff including prescriptions for Topamax,[6] Meloxicam,[7] Norflex,[8] and Diclofenac[9] for her various impairments and related symptoms, including pain. *See e.g.,* PageID 142-44, 700, 1089, 1091. Accordingly, Dr. Reddy did prescribe Plaintiff pain medication, and the ALJ's finding otherwise is error.

---

[5] An antalgic gait is a "limp in which a phase of the gait is shortened on the injured side to alleviate the pain experienced when bearing weight on that side." *Wyatt v. Comm'r of Soc. Sec.*, No. 12-11406, 2013 WL 4483074, at *17 n.17 (E.D. Mich. Aug. 19, 2013) (internal citation omitted).

[6] Topamax is used to help prevent migraine headaches. MayoClinic, *Topiramate*, MayoClinic.com, http://www.mayoclinic.org/drugs-supplements/topiramate-oral-route/description/drg-20067047 (last visited Nov. 18, 2015).

[7] Meloxicam is a nonsteroidal anti-inflammatory drug used to relieve the symptoms of arthritis, such as inflammation, swelling, stiffness, and joint pain. MayoClinic, *Meloxicam*, MayoClinic.com, http://www.mayoclinic.org/drugs-supplements/meloxicam-oral-route/description/drg-20066928 (last visited Nov. 18, 2015).

[8] Norflex is used to relax certain muscles and relieve the stiffness, pain, and discomfort caused by strains, sprains, and other muscle injury. MayoClinic, *Orphenadrine,* MayoClinic.com, http://www.mayoclinic.org/drugs-supplements/orphenadrine-injection-route/description/drg-20071873 (last visited Nov. 18, 2015).

[9] Diclofenac is a nonsteroidal anti-inflammatory drug used to treat pain and other symptoms of arthritis of joints. MayoClinic, *Diclofenac*, MayoClinic.com, http://www.mayoclinic.org/drugs-supplements/diclofenac-topical-application-route/description/drg-20063434 (last visited Nov. 18, 2015).

Finally, the undersigned finds the ALJ's assessment fails to consider significant evidence, as required by 20 C.F.R. § 404.1527(c)(2)(i), concerning the length of the treatment relationship and frequency of examination. At the time Dr. Reddy provided his June 2013 opinion, he had treated Plaintiff for chronic pain every two and a half weeks for over a year and a half and, therefore, could provide the "detailed, longitudinal picture of [Plaintiff's] medical impairment[,]" as contemplated by the regulations. 20 C.F.R. § 404.1527(c)(2); *see* PageID 143, 665, 667, 669, 672.

The Commissioner argues, *inter alia*, that the ALJ properly accorded Dr. Reddy's opinions "little weight" because his opinions were inconsistent regarding Plaintiff's standing and lifting limitations. Doc. 10 at PageID 1157. However, the ALJ never relied on such purported inconsistencies in discounting Dr. Reddy's opinions. *See* PageID 114-15. "[I]t is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." *Romig v. Astrue*, No. 1:12-cv-1552, 2013 WL 1124669, at *6 (N.D. Ohio Mar. 18, 2013) (citations omitted).

Based upon the foregoing, the undersigned finds that the ALJ failed to properly assess and give good reasons, supported by substantial evidence, for discounting the opinions of Plaintiff's treating physician. *See Blakley*, 581 F.3d at 409-10 (holding that "the Commissioner must follow his own procedural regulations in crediting medical opinions"). Accordingly, the ALJ's non-disability finding must be reversed.

**B.     Dr. Alwis**

The ALJ also erred in his analysis of Dr. Alwis's opinion. On August 1, 2013, Dr. Alwis diagnosed Plaintiff with a mood disorder, post-traumatic stress disorder ("PTSD"), depression,

and anxiety; assigned a Global Assessment of Functioning ("GAF")[10] score of 50; and opined that Plaintiff would be absent from work more than three times per month due to her impairments or treatment. PageID 1115-17. Dr. Alwis further opined that Plaintiff experiences "marked"[11] difficulties in maintaining social functioning; "often" has deficiencies of concentration, persistence, or pace; and has "repeated" episodes of deterioration or decompensation in work. PageID 1118. The ALJ gave Dr. Alwis's opinion "no weight" because he "provided no clinical findings to support his diagnosis or GAF assignment" and "the repeated episodes of deterioration . . . are simply unsubstantiated by the evidence of record." PageID 115.

---

[10] GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM-IV"). "The most recent (5th) edition of the Diagnostic and Statistical Manual of Mental Disorders does not include the GAF scale." *Judy v. Colvin*, No. 3:13cv257, 2014 WL 1599562, at *11 (S.D. Ohio Apr. 21, 2014); *see also* Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013) ("DSM-V") (noting recommendations "that the GAF be dropped from [DSM-V] for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice"). As set forth in the DSM-IV, however, a GAF of 31-40 indicates "[s]ome impairment in reality testing or communication," or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (*e.g.*,…avoids friends, neglects family, and is unable to work)." DSM-IV at 34. A GAF score of 41-50 indicates "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." *Id.*

[11] Whereas "moderate" functional limitations are "non-disabling," *see Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011), "marked" and "extreme" limitations are suggestive of disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(C) *et seq.*

Despite recognizing Dr. Alwis as a treating source,[12] PageID 115, the ALJ failed to conduct a controlling weight analysis of his opinion, which constitutes reversible error. *See supra.* The ALJ also failed to provide good reasons for assigning his opinion "no weight." PageID 115. First, insofar as the ALJ found that Dr. Alwis "provided no clinical findings to support his diagnosis or GAF assignment[,]" the Sixth Circuit has "acknowledged the difficulty inherent in proving psychological disabilities." *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 526 (6th Cir. 2014). "[W]hen mental [impairments are] the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field . . . ." *Id.* (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)). Here, Dr. Alwis, a psychiatrist, diagnosed Plaintiff with a mood disorder, post-traumatic stress disorder ("PTSD"), depression, and anxiety; and identified Plaintiff's signs and symptoms as including sleep and mood disturbance, emotional lability, psychomotor agitation or retardation, and generalized persistent anxiety. PageID 1115. The alleged lack of clinical findings thus does not provide substantial evidence upon which the ALJ could rely to reduce the weight accorded Dr. Alwis's opinion.

---

[12] The Commissioner argues that "it is questionable whether [Dr. Alwis] can even be considered a treating source" because the record only demonstrates that Plaintiff saw Dr. Alwis on two occasions. Doc. 10 at PageID 1158. Social Security regulations define a "treating physician" as the claimant's "own physician, psychologist, or other acceptable medical source who provides . . . or has provided . . . medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with" the claimant. 20 C.F.R. § 404.1502. A claimant has "an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that" the claimant currently sees, or previously saw, "the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." *Id.* A doctor treating a claimant "only a few times or only after long intervals" may be considered a "treating source if the nature and frequency of the treatment or evaluation is typical for [the claimant's] condition(s)." *Id.* Because the ALJ considered Dr. Alwis to be a treating source, PageID 115, the undersigned assumes for the purposes of this analysis that Dr. Alwis is Plaintiff's treating psychiatrist. *See Smith v. Comm'r of Soc. Sec.*, No. 1:11-cv-351, 2012 WL 1665513, at *11, 16 n.12 (S.D. Ohio May 11, 2012) (analyzing doctor's opinion, who had treated the plaintiff on two occasions, under the treating source framework when the ALJ considered him a treating source).

The only other reason the ALJ provided for rejecting Dr. Alwis's opinion was that his finding of "repeated episodes of deterioration [or] decompensation [is] simply unsubstantiated by the evidence of record." PageID 115. Such critique, even if accurate, does not justify rejecting all other potentially disabling limitations opined by Dr. Alwis, such as Plaintiff's "marked" difficulties in maintaining social functioning and anticipated work absences due to her impairments. PageID 1115-18. Accordingly, the undersigned concludes that the ALJ erred in assessing Dr. Alwis's opinion, and sustains Plaintiff's assignment of error in this regard.

## IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits. Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

In this instance, evidence of disability is not overwhelming in light of conflicting opinions in the record concerning Plaintiff's functional limitations. *See* PageID 161-63; 190-92; 685-87; 698-700; 703-11; 1050-53; 1115-19. Accordingly, the undersigned concludes that remand for further proceedings is necessary so the ALJ can reasonably and meaningfully weigh

all opinion evidence, assess Plaintiff's credibility, and determine Plaintiff's RFC and disability status anew.

## V.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

Date: December 9, 2015                     *s/ Michael J. Newman*
                                            Michael J. Newman
                                            United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).